## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

_____

№ 20-CV-1596 (LDH) (RER)
_____

MIGUEL RODRIGUEZ AND SIMON KHOSHABOW,

Plaintiffs,

VERSUS

CRICKET WIRELESS LLC, WIRELESS BBS INC., CELLPRO INC, MAYER VAKNIN, AND KIMBERLY VELEZ,

Defendants.

_____

**REPORT & RECOMMENDATION**
April 19, 2021
_____

**to the Honorable LaShann DeArcy Hall,
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiffs Miguel Rodriguez ("Rodriguez") and Simon Khoshabow ("Khoshabow") (collectively, "Plaintiffs") filed this suit against Cricket Wireless LLC ("Cricket"), Wireless BBS Inc., ("Wireless BBS"), CellPro Inc. ("CellPro"), Mayer Vaknin ("Vaknin"), and Kimberly Velez ("Velez") (collectively, "Defendants") claiming multiple violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the New York Labor Law ("NYLL") §§ 190 *et seq*. (Dkt. No. 1 ("Compl.") at 1).

The parties reached a settlement through court-annexed mediation and entered into a Memorandum of Understanding ("MOU"). (Dkt. No. 14; *see* Dkt. No. 18-2). Plaintiffs filed a motion for a premotion conference to enforce the MOU. (Dkt. No. 18 ("Pls.' Mot")). Your Honor referred the motion to me for a report and recommendation first as to settlement approval and second on the

1

motion to enforce that agreement. (Order dated 9/9/2020). For the reasons discussed herein, I respectfully recommend that the Court approve the settlement and enforce the MOU.

# BACKGROUND

Plaintiffs commenced this action on March 29, 2020. (Compl.). They alleged that Defendants employed them as sales associates and customer service representatives and that, throughout the duration of their employment, Defendants failed to pay overtime wages and spread of hours pay, as well as failed to maintain accurate recordkeeping as required by the FLSA and NYLL. (*Id.* ¶¶ 2, 8–10). Complicating the matter, at some point, Defendants became aware of customer claims that Plaintiffs fraudulently sold phones, receiving payment from customers but not delivering the phones. (*See* MOU ¶ 9; Dkt. No. 18-1).

The Court referred the matter to mediation on May 26, 2020. (Order dated 5/26/2020). All Plaintiffs and Defendants participated in mediation through counsel. (Pls.' Mot. at 1; MOU ¶ 1). At the end of mediation, the parties agreed in principle to settle the matter and all parties, together with their counsel, signed the MOU, which detailed all the material terms of their settlement. (Dkt No. 14; MOU at 3–4).

### A. The Settlement Agreement

The MOU to represent the "settlement agreement by and between [Plaintiffs] and [their] undersigned counsel of record, on the one hand, and [Defendants] . . . and all Released Parties[1] . . . on the other hand." (MOU ¶ 1). The MOU specifies a maximum settlement amount of $30,000 paid in ten installments exclusively by Vaknin, Velez, and/or Wireless BBS. (*Id.* ¶ 3). That amount includes a maximum of 33.33% ($9,999) paid to Plaintiffs' counsel as attorney's fees plus up to $1,040 in costs. (*Id.* ¶¶ 6–7). The MOU provides a payment plan for each of the ten installments. (*Id.* ¶ 7). It also provides a process through which Plaintiffs or their counsel would notify Vaknin, Velez, and/or Wireless BBS of any default in payment, and the right to a $60,000 judgment should they fail to cure the default. (*Id.* ¶ 8).

In the MOU, Plaintiffs agreed to release wage-related claims under federal, state, and local laws that accrued during their employment to the full extent of the relevant statutes of limitations and up until the Court's approval of the settlement agreement. (MOU ¶ 5). Vaknin, Velez, and/or Wireless BBS also agreed to "be solely responsible for resolving claims asserted by creditors/customers of Vaknin, Velez and/or Wireless BBS who allege that they were fraudulently sold phones and who allege that the purchased phones were never delivered." (*Id.* ¶ 9). They agreed to pay up to $10,000 to resolve any such claims. (*Id.*). Vaknin, Velez, and/or Wireless BBS also agreed to "fully cooperate in dropping any criminal charge brought against Plaintiffs." (*Id.* ¶ 10).

The parties agreed that "the MOU shall remain binding and enforceable until and unless the Court denies approval of the settlement with prejudice." (MOU ¶ 11). And further that they would "cooperate with each other to obtain approval of this settlement." (*Id.*). The parties and their counsel also agreed not to "engage in any publicity, including website or social media postings, of

---

[1] "The 'Released Parties' include Cricket, Wireless BBS, CellPro, Vaknin, and Velez and its past, present and future divisions, affiliates, predecessors, successors, assigns, shareholders, owners, officers, directors, employees, agents, trustees, attorneys, representatives, administrators, fiduciaries, beneficiaries, subrogees, executors, partners, parents, subsidiaries, and privies." (MOU ¶ 4).

2

any type related to this lawsuit, settlement or litigation against Defendants." (*Id.* ¶ 12).

### B. Communication Breakdown After Mediation

After signing the MOU, communication between the parties broke down. On June 23, 2020, the "BBS Cricket Team,"—which seemingly includes Wireles BBS, CellPro, Vaknin, and Velez, but not Cricket—emailed Plaintiffs' counsel requesting to discuss alternative resolutions of the matter. (Pls. Mot. at 1; Dkt. No. 18-1 at 1). Counsel for Wireless BBS, CellPro, Vaknin, and Velez was not involved with this email. (*See* Dkt. No. 18-1). Plaintiffs and Cricket were subsequently unable to reach the remaining defendants to enter into a long-form agreement consistent with the MOU. (Dkt. No 15).

Wireles BBS, CellPro, Vaknin, and Velez now refuse to abide by the MOU. During a telephone conference held on August 13, 2020, Vaknin was present without counsel.[2] (Min. Entry dated 8/13/2020). He stated that he could no longer abide by the terms of the MOU. (Min. Entry dated 8/13/2020, AT&T Log #9:31:11, at 10:37:00–10:44:00). In short, Vaknin claims that Rodriguez and others perpetuated fraud against customers and that those customers are now seeking legal action against Defendants. (*Id.* at 7:11:00–10:36:00). Therefore, Vaknin is now unwilling to drop the criminal charges and is unable to resolve the customers' claims by paying out $10,000, despite agreeing to do so by the terms of the MOU. (*Id.* at 16:37:00–17:00:00; Dkt. No. 18-1 at 1).

Plaintiffs moved to enforce the settlement agreement. (Dkt. No. 18). Cricket supports the motion. (Dkt. No. 19). Your Honor referred the motion to me for a report and recommendation. (Order dated 9/9/2020).

### DISCUSSION

Because Wireles BBS, CellPro, Vaknin, and Velez now refuse to abide by the MOU, the Court must first determine whether the agreement is fair pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and then whether it is enforceable against those Defendants.

### I. Settlement Approval

Pursuant to *Cheeks*, Courts in this Circuit review all settlements proposed under the FLSA for fairness. *See, e.g.*, *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751 (RRM) (RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The Second Circuit has found such review necessary to uphold the fundamental goals of the FLSA and prevent abuses by "unscrupulous employers." *Torres v. Mc Gowan Builders*, No. 18-CV-6099 (RML), 2020 WL 5369056, at *2 (E.D.N.Y. Sept. 8, 2020) (citing *Cheeks*, 796 F.3d at 207).

"There is 'a strong presumption in favor of finding a settlement fair.'" *Cortes v. Bronx Bar & Grill, LLC*, No. 19 Civ. 2819 (SN), 2019 WL 6318430, at *1 (S.D.N.Y. Nov. 25, 2019) (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). "The ultimate question is whether the proposed settlement reflects a fair and 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Mosquera v. Masada Auto Sales, Ltd.*, 09-CV-4925 (NGG), 2011 WL 282327,

---

[2] Counsel for Wireless BBS, CellPro, Vaknin, and Velez subsequently moved to withdraw as counsel. (Dkt. No. 16). The Court granted the motion, (Order dated 8/19/2020), and those Defendants have failed to retain new counsel.

at *1 (E.D.N.Y. Jan. 25, 2011)); *Cano v. Nineteen Twenty Four, Inc.*, No. 15-CV-4082 (RER), 2017 WL 11507654, at *6 (E.D.N.Y. Apr. 24, 2017) (quoting *Massiah*, 2012 WL 5874655, at *2–3) ("If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement.").

To determine whether an agreement is fair and reasonable, courts look to the totality of the circumstances, including:

(1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (collecting cases). Certain factors weigh against approval, including:

(1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstances will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."

*Id.* at 336 (citation omitted).

### C. Reasonableness

After careful review of the relevant factors and the totality of circumstances, I find that the terms of the settlement as detailed in the fully executed MOU are fair and reasonable. First, the maximum settlement amount reflects the range of Plaintiffs' possible recovery. Each Plaintiff worked for Defendants for only a short period,[3] and thus have relatively modest damages. Thus, $10,000 each is fair and reasonable.[4] *See Santos v. Yellowstone Props., Inc.*, No. 15 CIV. 3986 (PAE), 2016 WL 2757427, at *2 (S.D.N.Y. May 10, 2016) (approving FLSA settlement that provided $10,000 in damages for one plaintiff and $630 in damages to another plaintiff where both alleged only modest damages).

Second, the settlement avoids the expense and aggravation of litigation. *See Edwards v. Arqenta Inc.*, No. 18 CIV. 5896 (HBP), 2019 WL 4194223, at *2 (S.D.N.Y. Sept. 3, 2019). Plaintiffs' release of wage-related claims that accrued during their employment and until the agreement is approved is sufficiently limited in scope. *See Jun Cui v. O2 Korean BBQ*, No. 19-CV-2794 (DLI) (SJB), 2020 U.S. Dist. LEXIS 24657, at *10 (E.D.N.Y. Feb. 11, 2020), *R & R adopted in relevant part* (Nov. 30, 2020); *Pucciarelli*, 2017 WL 2778029, at *3 ("[A] release is valid only insofar as it precludes future claims that arise from the same facts at issue in the class action (its goal being to prevent the parties from litigating the same issues again under a different legal theory).") (quoting *Souza v. 65 St. Marks Bistro*, 15 Civ.

---

[3] Rodriguez and Kohsabow allege that Defendants employed them for approximately six months and one year, respectively. (Compl. ¶¶ 34–35).

[4] Plaintiffs have not provided sufficient detail for the Court to determine precisely what their maximum recovery would be. However, given their brief periods of employment, the statutory and liquidated damages available under the FLSA and NYLL, and the Court's extensive experience with wage and hour litigation, this amount is reasonable as the result of arm's-length negotiation.

4

327, 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015)).

Defendants claim that Plaintiffs perpetuated fraud against their customers. (Min. Entry dated 8/13/2020, AT&T Log #9:31:11, at 7:11:00–10:36:00). In the spirit of the FLSA, the Court's fairness analysis is primarily concerned with fraud or coercion committed by the employer to the disadvantage of the plaintiffs. *See Amhaz*, 2019 WL 9122944, at *3. Moreover, there is nothing in the record to suggest that fraud, allegedly committed by Plaintiffs, played a role *in the settlement*. Vaknin conceded that Defendants knew of the alleged fraud at the time they signed the agreement. (Min. Entry dated 8/13/2020, AT&T Log #9:31:11, at 10:56:00–11:05:00). In fact, the terms of the MOU reference the very actions of which Vaknin now complains. (MOU ¶¶ 9–10).

Further, the agreement was reached in mediation facilitated by the Court's mediation office; all of its terms were the result of contested litigation and arm's-length negotiation. *See Amhaz v. Booking.com (USA) Inc.*, No. 17 Civ. 2120 (GBD) (OTW), 2019 WL 9122944, at *3 (S.D.N.Y. Oct. 29, 2019) (citing *Zamora v. One Fifty Fifty Seven Corp.*, No. 14 Civ. 8043 (AT), 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016)), *R & R adopted by* 2020 WL 3498264 (June 29, 2020); *Santos*, 2016 WL 2757427, at *3 ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive." (quoting *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531 (AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013)). Accordingly, given the totality of circumstances, the settlement is fair and reasonable.

### D. Publicity Provision

The parties and their counsel agreed not to engage in "any publicity, including website or social media postings," related to the lawsuit, litigation, or settlement. (MOU ¶ 12). Courts in this Circuit are wary of confidentiality provisions in FLSA settlements and often find that they run counter to the FLSA's purpose of promoting workers' awareness of their rights. *See, e.g., Zorn-Hill v. A2B Taxi LLC*, No. 18 Civ. 11165 (KMK), 2020 WL 5578357, at *7 (S.D.N.Y. Sept. 17, 2020) (rejecting provision that prohibited "publicity" on social media as overly broad); *Cortes*, 2019 WL 6318430, at *2 (rejecting a settlement agreement that required plaintiff to "treat the existence and terms of the Agreement as confidential," including prohibiting plaintiff from "publishing the existence or terms of the terms of the agreement" on social media, on the internet, or with the press); *Chung v. Brooke's Homecare LLC*, No. 17 Civ. 2534 (AJN), 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018) (striking provision that prohibited any communication by either party with media and defined media to include social networking sites because parties presented no argument that the provision was necessary); *but cf. Flores v. Hill Country Chicken NY, LLC*, No. 16 Civ. 2916 (HBP), 2018 WL 2389076, at *4 (S.D.N.Y. May 25, 2018) (approving a settlement agreement containing a confidentiality provision because it was the result of an arm's-length negotiation and was not an absolute bar on discussing the settlement); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 Civ. 5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (same).

Here, Plaintiffs have not waived all rights to discuss the lawsuit or settlement, and the MOU was publicly filed with the Court for anyone to read. Further, the agreement was the result of an arm's-length negotiation with all parties represented by experienced counsel. *See Lola*, 2016 WL 922223, at *2 ("conclud[ing] that this provision is the result of fair bargaining between well-represented

5

parties and embodies a reasonable compromise that does not conflict with the FLSA's purpose of protecting against employer abuses."); *Chun Lan Guan v. Long Island Bus. Instute, Inc.*, No. 15-CV-02215 (CBA) (VMS), 2020 WL 1289517, at *3 (E.D.N.Y. Mar. 18, 2020) (approving provision that prohibited both parties from issuing press releases or communicating with media about agreements).

Critically, both Plaintiffs and Defendants are similarly restricted by the provision. *See Zorn-Hill*, 2020 WL 5578357, at *7 n.6 (collecting cases) ("Courts in the Second Circuit have found that restrictions binding both plaintiffs and defendants are more likely to be reasonable."). Given the allegations of fraud in this case, the publicity provision benefits Plaintiffs as well as Defendants. *See Daniels v. Haddad*, No. 17 Civ. 8067 (RA), 2018 WL 6713804, at *2 (S.D.N.Y. Dec. 17, 2018) ("Under the circumstances of this case—which involves represented parties settling related actions they have brought against each other—such a provision reflects 'a reasonable compromise that does not conflict with the FLSA's purpose of protecting against employer abuses.'"). Accordingly, this provision is reasonable.

### E. Attorney's Fees and Expenses

Finally, the Court must assess the reasonableness of the attorney's fees provided for by the settlement agreement. *Wolinsky*, 900 F. Supp. 2d at 336 (citing 29 U.S.C. § 216(b)). In an individual FLSA action where the parties settled on the fee through negotiation, there is "a greater range of reasonableness for approving attorney's fees." *Id.* (quoting *Misiewicz*, 2010 WL 2545439, at *5). In reviewing FLSA settlements, Courts in this Circuit have found that attorney's fees amounting to no more one third of the maximum settlement award are reasonable. *See Cano*, 2017 WL 11507654, at *6 ¶ 44–45 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)); *Edwards*, 2019 WL 4194223, at *3 (collecting cases).

The agreement specifies that a maximum of 33.3% of the settlement amount will be paid to Plaintiffs' counsel for attorney's fees. (MOU ¶ 6). This amount is reasonable compensation for this case.

### II. Settlement Enforcement

District courts are empowered to enforce settlement agreements in cases pending before them. *Velazquez v. Yoh Servs., LLC*, No. 17 Civ. 00842 (CM), 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017) (quoting *BCM Dev., LLC v. Oprandy*, 490 Fed. Appx. 409, 409 (2d Cir. 2013)). A settlement agreement is a binding contract. *Febus v. Guardian First Funding Grp., LLC*, 90 F. Supp. 3d 240, 245 (S.D.N.Y. 2015) (citing *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443–44 (2d Cir. 2005)). Thus, a motion to enforce a settlement agreement is analyzed according to general principles of contract law.[5] *Velazquez*, 2017 WL 4404470, at *2 (citing *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007)); *see also Sanchez v. Charity Rest. Corp.*, No. 14 Civ. 5468 (HBP), 2019 WL 4187356, at *1 (S.D.N.Y. Sept. 4, 2019) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994)) ("[A] motion to enforce a settlement agreement is

---

[5] The Second Circuit has not instructed whether New York State law or federal law should be applied to the enforcement of contracts. *See, e.g.*, *Velazquez*, 2017 WL 4404470, at *2 (citing *Figueroa v. N.Y.C. Dep't of Sanitation*, 475 Fed. Appx. 365, 366 (2d Cir. 2012)); *Powell v. Omnicom*, 497 F.3d 124, 129 n.1 (2d Cir. 2007)). However, the Second Circuit has found that there is no material difference between the two approaches. *See Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997). Accordingly, I apply only federal law in evaluating this matter. *See, e.g.*, *Rahman v. Kaplan Cornelia, Inc.*, No. 12 Civ 09095 (SN), 2014 WL 541851, at *4 n.4 (S.D.N.Y. Feb. 11, 2014) (collecting cases).

6

fundamentally 'a claim for breach of a contract.'").

A settlement agreement is binding and enforceable if there was an offer, acceptance, consideration, mutual assent, and intent to be bound. *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 173 (E.D.N.Y. 2006). A formalized long-form settlement agreement is not necessary if the parties reached a complete preliminary agreement. *Id.* A preliminary agreement is complete if "all the issues perceived to require negotiation" are included. *Id.* at 173–74 (citing *N. Fork Country, LLC v. Baker Publ'ns, Inc.*, 436 F.Supp.2d 441, 445 (E.D.N.Y. 2006)) ("The parties' intent to record an agreement in the future does not prevent contract formation before execution.").

In this Circuit, there is a presumption in favor of enforcing settlement agreements. *Febus*, 90 F. Supp. 3d at 245–46 (quoting *Preston Frankford Shopping Ctr. Dallas, Tx. Ltd. P'ship v. Butler Dining Servs., LLC*, 757 F. Supp. 2d 248, 252 (W.D.N.Y. 2010)) ("It is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them."). I find no reason to deviate from the prevailing view here. At all times during the settlement process, negotiations were conducted at arm's-length. All Defendants were present at the mediation along with counsel. (Pls.' Mot. at 1; MOU ¶ 1). The parties reached a resolution of all claims and executed the MOU detailing all material terms of their settlement, including how those terms would be implemented. (MOU at 3–4). This preliminary agreement is sufficient.

Wireless BBS, Vaknin, and Velez did not submit briefing in response to Plaintiffs' motion other than two letters, which include additional allegations of Plaintiffs' fraudulent activity.[6] (Dkt. Nos. 20–21). However, Defendants, who were represented by counsel at the time, were aware of the alleged fraud when they signed the MOU and still assented to its terms. (Min. Entry dated 8/13/2020, AT&T Log #9:31:11, at 10:56:00–11:05:00). Moreover, the MOU did not include any terms that would suggest that the settlement was conditioned on the successful resolution of the customers' complaints.

Defendants are thus bound by the terms of the settlement agreement as clearly set forth in their complete preliminary agreement—the MOU. Accordingly, I respectfully recommend that the Court grant Plaintiffs' motion to enforce the settlement agreement.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court approve the parties' settlement and grant Plaintiffs' motion to enforce the settlement.

Plaintiffs' counsel are hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court promptly thereafter. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable LaShann DeArcy Hall within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small*

---

[6] At the August 13th hearing, Vaknin explained that, at the time he signed the MOU, he believed that he could abide its terms; however, he has subsequently come to believe that he cannot resolve the customers' complaints through payments alone; and therefore, should be permitted to renegotiate its terms. (Min. Entry dated 8/13/2020, AT&T Log #9:31:11, at 12:22:00–12:32:00).

*v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


RESPECTFULLY RECOMMENDED

*/s/ Ramon E. Reyes, Jr.*
_____
Hon. Ramon E. Reyes, Jr.
United States Magistrate Judge
Dated: April 19, 2021